UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER BEALL, an individual,

Plaintiff,

v.                                                      Case No.: 8:26cv 1415· CEH-AAS

BEALL'S, INC., a Florida corporation, and
BEALL'S WESTGATE CORPORATION, a
Florida corporation

Defendants.

_____/

## COMPLAINT

Plaintiff Jennifer Beall, through its undersigned counsel, sues Defendants, Beall's, Inc. and Beall's Westgate Corporation, and alleges as follows:

## PARTIES

1.    Plaintiff, Jennifer Beall ("Ms. Beall" or "Plaintiff"), is domiciled in and a citizen of California and is, and at all material times has been, a shareholder of Beall's, Inc. and of Beall's Westgate Corporation.

2.    Defendant, Beall's, Inc. ("Bealls"), is a corporation formed under the laws of the State of Florida authorized to do business in the State of Florida with its principal place of business located at 1806 38th Avenue East, Bradenton, Florida 34208. Defendant, Beall's Westgate Corporation ("Westgate" and together with Bealls, "Defendants" or the "Company"), is a corporation formed under the laws of the State of Florida authorized to do business in the State of Florida with its principal place of business located at 1806 38th Avenue East, Bradenton, Florida 34208.

MAY 11 2026 PM3:58
RCVD - USDC - FLMD - TPA

## JURISDICTION AND VENUE

3.      This is an action for enforcement of a shareholder's statutory right to inspect corporate records, as well as all applicable attorney's fees and costs.

4.      Plaintiff Beall, if successful in obtaining an order to produce the corporate records requested, is entitled to recovery of all of her attorney's fees from Defendants pursuant to § 607.1604, Fla. Stat. Thus far, Plaintiff has incurred in excess of thirty-five thousand dollars ($35,000) in her efforts to obtain the requested documents from Defendant Bealls and has additionally incurred in excess of thirty-five thousand dollars ($35,000) in her efforts to obtain the requested documents from Defendant Westgate. Plaintiff reasonably anticipates incurring at least an additional fifty thousand dollars ($50,000.00) in attorney's fees in this litigation with Bealls and an additional an additional fifty thousand dollars ($50,000.00) in attorney's fees in this litigation with Westgate.

5.      The value to the Plaintiff in obtaining the requested documents from Beall's exceeds $75,000. Without this information, Plaintiff's shares are devalued as the information sought is necessary to effectively assess the true value of her shares in Bealls. The lack of the requested information causes Plaintiff's to suffer a devaluation, in the form of an information discount, of at least ten percent (10%) in the fair market value of those shares. Plaintiff currently holds ███████ shares, representing ██████ ownership in Bealls. Bealls has reported to Plaintiff that the book value of Bealls is ██████████ and, therefore, her share of that book value is approximately ██████████ Book value is traditionally much lower than fair market value and, therefore, the lack of information regarding Bealls due to the failure to produce the requested documents devalues her shares by at least ██████████ (10% of the book value).

2

6.     The value to the Plaintiff in obtaining the requested documents from Westgate exceeds $75,000. Without this information, Plaintiff's shares are devalued as the information sought is necessary to effectively assess the true value of her shares in Westgate. The lack of the requested information causes Plaintiff's shares to suffer a devaluation, in the form of an information discount, of at least ten percent in the fair market value of those shares. Plaintiff currently holds ▮ shares, representing ▮ ownership in Westgate. Westgate has reported to Plaintiff that the book value of Westgate is ▮ and, therefore, her share of that book value is approximately ▮ Book value is traditionally much lower than fair market value and, therefore, the lack of information regarding Westgate due to the failure to produce the requested documents devalues her shares by at least ▮ 10% of the book value).

7.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     Venue is properly before this Court pursuant to 28 U.S.C. § 1391(a)(1) because the Defendants reside in this judicial district.

## GENERAL ALLEGATIONS

9.     The history of Bealls and Westgate, as explained in their website, dates back to 1915 when Robert M. Beall opened a simple dry goods store on Old Main Street in Bradenton Florida and named it Dollar Limit. In 1946, Robert was joined by his son Egbert and they renamed their store "Beall's Department Store." During the 1960's, Robert and Egbert began opening stores throughout Florida. In the 1970s, Egbert's son, Bob Beall, joined Bealls and he later became the President and CEO of Bealls in 1980. The 1970s and 1980s saw continued expansion of Bealls into new store locations, the evolution of Bealls from budget brands to main floor brands and the entrance of Bealls into the off-price shopping format. In the 1990s, Bealls began expanding beyond

the Florida border and into other states. Robert Mathews Beall III ("Matt") became the fourth generation member of the Beall family to work in the family business in the 2000s and, in 2020, became the CEO of Beall's and Westgate. Today, Bealls operates over 650 stores and Westgate operates 48 stores.



15.    Plaintiff is a shareholder of Bealls and Westgate and the great granddaughter of the founder, Robert M. Beall.



16.

18. ██████████████████████████████████████ Plaintiff and her family have witnessed odd behavior from Matt and each company.



27.   The curious behavior by Matt has expanded into other matters



raised concerns for Ms. Beall as a shareholder of both Bealls and Westgate.

31.   As a shareholder of Bealls and Westgate, Plaintiff possesses statutory rights to inspect corporate books and records under § 607.1602, Fla. Stat.

7

32.     Plaintiff has requested access to certain documents as a shareholder to address her legitimate concerns about Bealls and Westgate.

33.     On or around October 20, 2025, Plaintiff sent a request for certain documents to Bealls and Westgate (the "First Demand"), requesting the following:

a.     The current Bylaws of Bealls, its subsidiaries, and all adopted amendments.

b.     The Articles of Incorporation for Bealls, along with any restatements or amendments.

c.     The most recently approved organizational chart, detailing the company's internal structure and key leadership positions.

d.     Official minutes from all meetings of the Board of Directors for the past four fiscal years.

e.     All resolutions passed by the Board of Directors during the past four fiscal years.

f.     Audited financial statements for Bealls for the past four fiscal years, including balance sheets, income statements, statements of cash flows, and accompanying notes.

g.     Audited financial statements for Westgate and any other significant subsidiary or affiliated entities that fall under the Bealls corporate structure, for the past four fiscal years.

h.     Detailed breakdowns of all significant expenditures that fall outside the primary retail operations of Bealls and its core business model. This includes, but is not limited to, investments in non-retail ventures (e.g., real estate), sponsorships

(e.g., podcast, experiences), or other large acquisitions not directly related to clothing store operations, for the past four fiscal years.

i.      A comprehensive accounting and documentation of all corporate investments made utilizing Bealls' profits over the past five fiscal years, including the nature of each investment, its initial value, current valuation, and associated financial performance.

A true and correct copy of the First Demand is attached hereto as **Exhibit A**.

34.     Plaintiff stated proper purposes for the First Demand and made the request in good faith, as required under § 607.1602, Fla. Stat.

35.     Plaintiff explained that the purpose of the First Demand included, but was not limited to the following:

1.  essential to fulfill her oversight responsibilities and gain a comprehensive understanding of the company's governance and operational strategies;

2.  investigate the potential mismanagement and waste of corporate assets related to expenditures outside the company's primary business operations;

3.  to evaluate the board's due diligence and decision making process regarding expenditures on projects unrelated to the company's retail operations, including potential investments and sponsorships; and

4.  to obtain an informed understanding as a shareholder and for assessing the company's financial health, strategic direction, and adherence to sound corporate governance principles.

36.     On or around November 6, 2025, Maddaloni responded to Plaintiff's request for documents. In their late response, Defendants failed to provide any documents to Plaintiff except

9

for production of the following: bylaws of Bealls, Beall's Westgate Corporation, Beall's Florida Inc., Beall's Imports, Inc., BDSRCO, Inc., and Bealls 1987 Inc.; articles of incorporation of Bealls and certain subsidiaries; and audited financial statements for Bealls and Westgate for the years FY 22-25.

37.     Bealls and Westgate did not provide any of the following: (1) most recently approved organizational chart, detailing the company's internal structure and key leadership; (2) official minutes from all meetings of the Board of Directors for the past four fiscal years; (3) all resolutions passed by the Board of Directors during the past four fiscal years; (4) detailed breakdowns of all significant expenditures that fall outside the primary retail operations of Bealls, and its core business model including, but is not limited to, investments in non-retail ventures (e.g., real estate), sponsorships (e.g., podcast, experiences), or other large acquisitions not directly related to clothing store operations, for the past four fiscal years; or (5) a comprehensive accounting and documentation of all corporate investments made utilizing Bealls' profits over the past five fiscal years, including the nature of each investment, its initial value, current valuation, and associated financial performance.

38.     On or about January 14, 2026, Plaintiff served Defendants with a second written demand (the "Second Demand") to inspect and copy corporate books and records. A true and correct copy of the Second Demand is attached hereto as **Exhibit B**.

39.     The Second Demand complied with the requirements of § 607.1602, Fla. Stat. including:

    a.  Being made in good faith and for a proper purpose;

    b.  Describing with reasonable particularity the records requested and the shareholder's purpose; and

    c.  The records are directly connected to the shareholder's purpose

40.    The Second Demand provided Defendants with more than the required statutory notice prior to the requested inspection date.

41.    In the Second Demand, Plaintiff requested inspection and copying of the following records:

a) Articles of incorporation, as currently in effect for the following entities;
   i.    Bealls Westgate, Inc.;
   ii.    Beall's Florida, Inc.; and
   iii.    Beall's 1987, Inc.
b) List of all shareholders and members for the Company and each subsidiary or affiliate of the Company.
c) Bylaws, as currently in effect for the following entities:
   i.    Beall's Westgate, Inc.;
   ii.    Beall's Florida, Inc.;
   iii.    Beall's 1987, Inc.; and
   iv.    Beall's Ecommerce, Inc.
d) Any notices to shareholders referred to in § 607.0120(11)(d), Fla. Stat. specifying facts on which a filed document is dependent, if such facts are not included in the articles of incorporation or otherwise available as specified in § 607.0120(11)(d), Fla. Stat.;
e) All written communications within the past 5 years from the Company to shareholders generally or to shareholders of a class or series;
f) Minutes of all meetings of, and records of all actions taken with or without a meeting by, the Company's shareholders, its board of directors, and any board committees established under § 607.0825, Fla. Stat., including approval of prior year's (FY 2025) meeting minutes, election of board of directors, and the ratified actions of the board of directors;
g) A list of the names and business street addresses of the Company's current directors and officers;
h) The financial statements prepared for the Company for each of the last 5 fiscal years as well as for each of the following entities:
   i.    Beall's DC TX, LLC;
   ii.    Beall's Land Preservation LLC;
   iii.    Beall's Health and Fitness, LLC;
   iv.    Beall's 1987 Westgate, LLC;
   v.    RMB II, LLC;
   vi.    The Beall and Szymanski Families Asset Preservation Company, LLC;
   vii.    Matt Beall Limitless, LLC; and
   viii.    The FL LLC (as mentioned in the 2025 Bealls Inc. Annual Report).
i) General Ledger of the Company for the last 5 years.
j) The audited financial statement for the fiscal year of 2025 of the Company;

k) The CEO Report referenced in the Bealls Inc. "Annual Shareholders Meeting Agenda" for the shareholder meeting scheduled to take place on January 13, 2026 (the "2026 Meeting Agenda");

l) All documents identifying the "Actions of the Board of Directors for the Prior Year" referenced in the 2026 Meeting Agenda.

m) The "Prior Year Meeting Minutes" identified in the 2026 Meeting Agenda.

n) The Amended and Restated Indemnification Release Agreement dated as of December 20, 2012;

o) The Indemnification and Release Agreement dated as of December 14, 2012;

p) The operating agreements as currently in effect for each of the following entities;
   i.   Beall's DC TX, LLC;
   ii.  Beall's Land Preservation LLC;
   iii. Beall's Health and Fitness, LLC;
   iv.  Beall's 1987 Westgate, LLC;
   v.   RMB II, LLC;
   vi.  The Beall and Szymanski Families Asset Preservation Company, LLC;
   vii. Matt Beall Limitless, LLC; and
   viii. The FL LLC (as mentioned in the 2025 Beall's Annual Report).

q) The articles of organization, as currently in effect for the FL LLC (as mentioned in the 2025 Beall's Annual Report).

r) The federal, state, and local income tax returns for the Company and each of its Affiliates for the most recent 5 years as well as for each of subsidiaries and affiliated companies.

s) Expenditures Not For the Retail Dry Goods Business. Accounting records (including detailed schedules and reports) together with supporting documentation (including agreements, invoices and purchase orders) identifying all expenditures by the Company that do not directly support the retail sale of dry goods at the Company's stores. This request includes, without limitation, expenditures related to non-retail ventures (including real estate investments), sponsorships (including podcasts, experiential marketing, or similar arrangements), and any other material acquisitions or commitments that do not directly support retail dry good operations, for each of the past five (5) fiscal years.

t) Capital Investments. Complete accounting records and supporting documentation for all capital investments made by the Company during the past five (5) fiscal years, including for each such capital investment:
   i.   the nature and purpose of the capital investment;
   ii.  the initial investment amount and date;
   iii. the current valuation or carrying value of the investment; and
   iv.  any available records reflecting the financial performance or returns associated with the investment.

u) Affiliate Agreements. A copy of all agreements between the Company or any Affiliate of the Company, on the one hand, and any officer or director of the Company, on the other hand, including, without limitation, Robert Matthews Beall III (hereafter, "Matt Beall") and each such agreement, hereafter an "Affiliate Agreement") and all records identifying all work performed under said Affiliate

12

Agreements and all payments made by the Company pursuant to any such Affiliate Agreement.

v) <u>Affiliate Payments</u>. Accounting records and supporting documentation including bank records reflecting payment (including reimbursement) by the Company of any personal expenses for any officer or director of the Company during the past five fiscal years of the Company.

w) <u>Foundation Records</u>. All organizational documents (including articles and bylaws) for any foundation established by or to benefit the Company or any of its employees.

42. Plaintiff explained the Second Demand was made in good faith and for the proper purposes of evaluating (i) the value of Ms. Beall's interest/shares in Bealls and Westgate; (ii) the financial condition of Bealls and Westgate, ███████████████████████████████ ███████████████████████████████████████████ ████████████████████████████ (v) whether Bealls and Westgate have been properly managed and whether there have been any breaches of fiduciary duties owed to Bealls and Westgate, including any mismanagement and/or waste of corporate assets; (vi) whether Bealls and Westgate are funding personal matters and/or projects of Matt Beall ████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████ (vii) whether Bealls and Westgate have committed to Affiliate Agreements that are not in the best interests of Bealls and Westgate or contain terms or conditions that are not commercially reasonable or are wasteful of their resources; and (viii) whether Bealls and Westgate have paid or are improperly paying the personal expenses of any officer or director of Bealls or Westgate. Ms. Beall further explained that the information requested was material to evaluating Ms. Beall's rights in Bealls and Westgate.

43. Ms. Beall has also offered to enter into a reasonable confidentiality agreement to protect information deemed confidential by Bealls or Westgate. However, Defendants rejected the

13

confidentiality agreement and, instead, insisted on unnecessary provisions that were meant to isolate Ms. Beall from her family and fellow shareholders, maximize the cost and expense of reviewing the requested documents and unduly limit Ms. Beall from legitimate use of the records. These demands by Defendants prevented Ms. Beall and Defendants from entering into a confidentiality agreement.

44.    Despite Plaintiff's lawful Second Demand, Defendants refused to produce any documents within the time required by statute, delayed for weeks in producing anything and, ultimately, entirely failed and refused to produce any of the following:

a) List of all shareholders and members for the Company and each subsidiary or affiliate of the Company.

b) Any notices to shareholders referred to in § 607.0120(11)(d), Fla. Stat. specifying facts on which a filed document is dependent, if such facts are not included in the articles of incorporation or otherwise available as specified in § 607.0120(11)(d), Fla. Stat.;

c) All written communications within the past 5 years from the Company to shareholders generally or to shareholders of a class or series;

d) Minutes of all meetings of, and records of all actions taken with or without a meeting by, the Company's shareholders, its board of directors, and any board committees established under § 607.0825, Fla. Stat., including approval of prior year's (FY 2025) meeting minutes, election of board of directors, and the ratified actions of the board of directors;

e) The financial statements prepared for the Company for each of the last 5 fiscal years as well as for each of the following entities:
   i.     Beall's DC TX, LLC;
   ii.    Beall's Land Preservation LLC;
   iii.   Beall's Health and Fitness, LLC;
   iv.    Beall's 1987 Westgate, LLC;
   v.     RMB II, LLC;
   vi.    The Beall and Szymanski Families Asset Preservation Company, LLC;
   vii.   Matt Beall Limitless, LLC; and
   viii.  The FL LLC (as mentioned in the 2025 Bealls Inc. Annual Report).

f) General Ledger of the Company for the last 5 years.

g) The CEO Report referenced in the Bealls Inc. "Annual Shareholders Meeting Agenda" for the shareholder meeting scheduled to take place on January 13, 2026 (the "2026 Meeting Agenda");

h) All documents identifying the "Actions of the Board of Directors for the Prior Year" referenced in the 2026 Meeting Agenda.

i) The "Prior Year Meeting Minutes" identified in the 2026 Meeting Agenda.

14

j)  The Amended and Restated Indemnification Release Agreement dated as of December 20, 2012;

k)  The Indemnification and Release Agreement dated as of December 14, 2012;

l)  The operating agreements as currently in effect for each of the following entities;
   i.  Beall's DC TX, LLC;
   ii.  Beall's Land Preservation LLC;
   iii.  Beall's Health and Fitness, LLC;
   iv.  Beall's 1987 Westgate, LLC;
   v.  RMB II, LLC;
   vi.  The Beall and Szymanski Families Asset Preservation Company, LLC;
   vii.  Matt Beall Limitless, LLC; and
   viii.  The FL LLC (as mentioned in the 2025 Beall's Annual Report).

m)  The articles of organization, as currently in effect for the FL LLC (as mentioned in the 2025 Beall's Annual Report).

n)  The federal, state, and local income tax returns for the Company and each of its Affiliates for the most recent 5 years as well as for each of subsidiaries and affiliated companies.

o)  Expenditures Not For the Retail Dry Goods Business. Accounting records (including detailed schedules and reports) together with supporting documentation (including agreements, invoices and purchase orders) identifying all expenditures by the Company that do not directly support the retail sale of dry goods at the Company's stores. This request includes, without limitation, expenditures related to non-retail ventures (including real estate investments), sponsorships (including podcasts, experiential marketing, or similar arrangements), and any other material acquisitions or commitments that do not directly support retail dry good operations, for each of the past five (5) fiscal years.

p)  Capital Investments. Complete accounting records and supporting documentation for all capital investments made by the Company during the past five (5) fiscal years, including for each such capital investment:
   i.  the nature and purpose of the capital investment;
   ii.  the initial investment amount and date;
   iii.  the current valuation or carrying value of the investment; and
   iv.  any available records reflecting the financial performance or returns associated with the investment.

q)  Affiliate Agreements. A copy of all agreements between the Company or any Affiliate of the Company, on the one hand, and any officer or director of the Company, on the other hand, including, without limitation, Robert Matthews Beall III (hereafter, "Matt Beall") and each such agreement, hereafter an "Affiliate Agreement") and all records identifying all work performed under said Affiliate Agreements and all payments made by the Company pursuant to any such Affiliate Agreement.

r)  Affiliate Payments. Accounting records and supporting documentation including bank records reflecting payment (including reimbursement) by the Company of any personal expenses for any officer or director of the Company during the past five fiscal years of the Company.

s) <u>Foundation Records</u>. All organizational documents (including articles and bylaws) for any foundation established by or to benefit the Company or any of its employees.

45.    Defendants' refusal to produce the requested records is improper and in violation of Plaintiff's statutory rights.

46.    On or about April 10, 2026, Plaintiff served Defendants with a third written demand (the "Third Demand" and, together with the First Demand and Second Demand, the "Document Demands") to inspect and copy corporate books and records. A true and correct copy of the Third Demand is attached hereto as **Exhibit C**.

47.    The Third Demand complied with the requirements of § 607.1602, Fla. Stat. including:

a.   Being made in good faith and for a proper purpose;

b.   Describing with reasonable particularity the records requested and the shareholder's purpose; and

c.   The records are directly connected to the shareholder's purpose

48.    Together with the Third Demand, Plaintiff provided a reasonable confidentiality agreement that she would be willing to enter into to protect the confidentiality needs, if any, of the Defendants. A true and correct copy of such confidentiality agreement is contained within Exhibit C.

49.    In the Third Demand, Plaintiff requested inspection and copying of the following records:

a)   A copy of all agreements between (i) the Company or any Affiliate of the Company, on the one hand, and (ii) any officer or director of the Company, any member of any Company committee (including, without limitation, any compensation committee) or any Affiliate of any such Person (each, an "Affiliate Agreement") for the past five years. The term "Affiliate" means with respect to any Person, any other Person Controlling, Controlled by or under common Control with such

16

Person. The term "Person" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization or other entity. The term "Control" (and correlative terms) means, with respect to any Person, the power to direct the management of the Person (directly or indirectly) and the ownership of more than 50% of the voting securities, other voting ownership or voting partnership interests of such Person (or, if there are no such voting interests, more than 50% of the equity interests of such Person).

b) All documents identifying any bids or proposals by third parties to perform any of the services currently being provided under any Affiliate Agreement together with a copy of each such bid or proposal.

c) All records identifying all work performed for the Company under each Affiliate Agreement.

d) All documents reflecting payments made by the Company pursuant to any Affiliate Agreement.

e) All board of director meeting minutes or resolutions authorizing each Affiliate Agreement.

f) All agreements between the Company and any third party regarding acceptance of cryptocurrencies as payment for goods sold by the Companies or their affiliates including, without limitation, any agreements with FLEXA, INC., most commonly known as FlexaHQ on the X platform (each, a "Cryptocurrency Agreement").

g) All board of director meeting minutes or resolutions authorizing any Cryptocurrency Agreement.

h) All studies and/or analysis performed by or on behalf of the Company for purposes of evaluating the advantages and disadvantages of the Company accepting cryptocurrency as a form of payment.

i) All records reflecting payment (including reimbursement) by the Company for (i) the costs of any podcasts by Robert Matthews Beall III or his spouse during the past five fiscal years of the Company or (ii) any social media content or message generated by or on behalf of Matt III.

j) All agreements between the Company and Kathy Tolleson and/or any affiliate of Kathy Tolleson including agreements relating to board retreats.

k) All communications from Company personnel regarding any training, counseling or therapy provided by Kathy Tolleson paid for, in whole or in part, by the Company.

50.    Plaintiff explained that the Third Demand was made in good faith and for the proper purpose of evaluating (i) the value of Ms. Beall's interest/shares in the Company; (ii) the financial condition of the Company, ███████████████████████████████████████ ███████████████████████████████████ (v) whether the Company has been properly managed and whether there have been any breaches of fiduciary duties by

17

management of the Company, including any mismanagement and/or waste of corporate assets; (vi) whether the Company is funding personal matters and/or projects of Robert Matthews Beall III

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ and (vii) whether the Company has committed itself to Affiliate Agreements or other agreements that are not in the best interests of the Company or contain terms or conditions that are not commercially reasonable or are wasteful of Company resources The information requested is also material to evaluating Ms. Beall's rights in the Company.

51.    Defendants asked for an extension of time until April 29, 2026, to respond and Ms. Beall agreed to such extension.

52.    To date, Defendants have not responded to the Third Demand and have produced no documents.

53.    Defendants' refusal to produce the requested records is improper and in violation of Plaintiff's statutory rights.

54.    All conditions-precedent to this suit have occurred, have been performed, and/or have been waived.

55.    Plaintiff has engaged the undersigned attorneys to represent her in this matter and is obligated to pay said attorneys a reasonable fee for their services performed in this matter.

### COUNT I – COURT-ORDERED INSPECTION OF CORPORATE RECORDS
### (Bealls)

56.    Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

57.    Plaintiff is a shareholder of Bealls.

58.    Pursuant to Section 607.1602, Florida Statutes, a shareholder is entitled to inspect and copy the official records of the company.

59.    Plaintiff sent the Document Demands pursuant to Section 607.1602, Fla. Stat. to Bealls in compliance with the statute.

60.    Plaintiff has satisfied all statutory requirements necessary to inspect the requested corporate records.

61.    Plaintiff's Document Demands were made in good faith and for a proper purpose.

62.    Bealls has refused to comply with the Document Demands, wrongly claiming that Plaintiff is not entitled to a majority of the documents requested.

63.    To date, Bealls has failed to provide access to most of the documents requested in the Document Demands.

64.    Bealls has no lawful basis for withholding the requested records.

65.    Based upon Bealls' failure to meet its legal duty and grant Plaintiff access to the records requested and pursuant to Section 607.1604, Florida Statutes, this Court has the authority to summarily order that the records demanded be produced by Bealls, at Bealls' expense.

66.    Under Section 607.1604, Florida Statutes, Plaintiff is entitled to her reasonable attorney's fees reasonably incurred to obtain the requested order and enforce her rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Bealls (i) ordering Bealls to immediately grant Plaintiff access to inspect and copy all documents requested of Bealls in the Document Demands at Bealls' cost and expense; (ii) requiring Bealls to pay Plaintiff's attorney's fees and costs incurred in bringing this action pursuant to § 607.1604, Fla. Stat and (iii) granting such other and further relief as this Court deems just and proper.

## COUNT II – COURT-ORDERED INSPECTION OF CORPORATE RECORDS
### (Westgate)

67.     Plaintiff realleges paragraphs 1 through 55 as if fully set forth herein.

68.     Plaintiff is a shareholder of Westgate.

69.     Pursuant to Section 607.1602, Florida Statutes, a shareholder is entitled to inspect and copy the official records of the company.

70.     Plaintiff sent the Document Demands pursuant to Section 607.1602, Fla. Stat. to Westgate in compliance with the statute.

71.     Plaintiff has satisfied all statutory requirements necessary to inspect the requested corporate records.

72.     Plaintiff's Document Demands were made in good faith and for a proper purpose.

73.     Westgate has refused to comply with the Document Demands, wrongly claiming that Plaintiff is not entitled to the vast majority of the documents requested.

74.     To date, Westgate has failed to provide access to most of the documents requested in the Document Demands.

75.     Westgate has no lawful basis for withholding the requested records.

76.     Based upon Westgate's failure to meet its legal duty and grant Plaintiff access to the records requested and pursuant to Section 607.1604, Florida Statutes, this Court has the authority to summarily order that the records demanded be produced by Westgate, at Westgate's expense.

77.     Under Section 607.1604, Florida Statutes, Plaintiff is entitled to her reasonable attorney's fees reasonably incurred to obtain the requested order and enforce her rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Westgate (i) ordering Westgate to immediately grant Plaintiff access to inspect and

copy all documents requested of Westgate in the Document Demands at Westgate's cost and expense; (ii) requiring Westgate to pay Plaintiff's reasonable attorney's fees and costs incurred in bringing this action pursuant to § 607.1604, Fla. Stat and (iii) granting such other and further relief as this Court deems just and proper.

Dated: May 8, 2026.

**GIVNER LAW GROUP, LLP**
*Attorneys for Plaintiff*
19790 W. Dixie Hwy, Suite 706
Miami, FL 33180
Telephone: 305-933-9970

By: ___*/s/ J. Joseph Givner*___
   J. Joseph Givner
   Florida Bar No.: 850705
   Email: jgivner@givner.law

# Exhibit A

Jennifer Beall

Begin forwarded message:

On Monday, October 20, 2025, 12:28 PM,
jennifermani@yahoo.com <jennifermani@yahoo.com>
wrote:

Dear Michael,

I trust this message finds you well.

As a dedicated shareholder of Bealls,
Inc., I am formally exercising my rights to
access specific corporate records and
financial documentation that are
essential for me to fulfill my oversight
responsibilities and gain a
comprehensive understanding of the
company's governance and operational
strategies. I am requesting this
information



To that end, I respectfully request access
to the following documents for Bealls,
Inc., Bealls Westgate, and where
applicable, its subsidiaries or affiliated
entities, for the past five fiscal years
2020 through 2025:

**I. Corporate Governance and
Structure:**
1. The current Bylaws of Bealls, Inc.,
its subsidiaries, and all adopted
amendments.
2. The Articles of Incorporation for Bealls,

Inc., along with any restatements or amendments.

3. The most recently approved organizational chart, detailing the company's internal structure and key leadership positions.

**II. Board of Directors Records:**
1. Official minutes from all meetings of the Board of Directors for the past four fiscal years.

2. All resolutions passed by the Board of Directors during the past four fiscal years. The purpose of requesting board minutes is to evaluate the board's due diligence and decision making process regarding expenditures on projects unrelated to the company's retail operations, including potential investments and sponsorships.

**III. Financial Statements:**
1. Audited financial statements for Bealls, Inc. for the past four fiscal years, including balance sheets, income statements, statements of cash flows, and accompanying notes.

2. Audited financial statements for Westgate, Inc., and any other significant subsidiary or affiliated entities that fall under the Bealls corporate structure, for the past four fiscal years.

**IV. Detailed Financial Disclosures and Investment Records:**
1. Detailed breakdowns of all significant expenditures that fall outside the primary retail operations of Bealls, Inc. and its core business model. This includes, but is not limited to, investments in non-retail

ventures (e.g., real estate), sponsorships (e.g., podcast, experiences), or other large acquisitions not directly related to clothing store operations, for the past four fiscal years.

2. A comprehensive accounting and documentation of all corporate investments made utilizing Bealls, Inc. profits over the past five fiscal years, including the nature of each investment, its initial value, current valuation, and associated financial performance.

This information is crucial for my informed understanding as a shareholder and for assessing the company's financial health, strategic direction, and adherence to sound corporate governance principles. As you know, in the spring of 2025, I requested to write a letter to the board members of my concerns and was denied access to their emails.

I kindly request that you provide these records in a timely manner, consistent with both Bealls, Inc.'s corporate bylaws and statutory shareholder rights based on Florida law. Please advise on the preferred method of access, whether electronic or hard copy, and any procedures I need to follow for review.

Thank you so much for your immediate attention to this important matter. I anticipate your prompt response and I know you are well aware of the reasons for my inquiry. If it takes a few days to get all of this information, I totally

understand. Thanks!

Sincerely,

Jennifer Beall

Sent from Yahoo Mail for iPhone
Jennifer Beall

**Do not open any attachments or links from unknown senders.** Forward suspicious emails to phishing@beallsinc.com. Be a Human Firewall.

**Do not open any attachments or links from unknown senders.** Forward suspicious emails to phishing@beallsinc.com. Be a Human Firewall.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

# Exhibit B



19790 W. Dixie Hwy., Suite 706, Miami, Florida 33180

Telephone (305) 933-9970 | Facsimile (786) 520-2704
www.GivnerLawGroup.com

January 14, 2026

**Via Email:**
Mr. Michael Maddaloni
VP Tax & Shareholder Relations/Asst. Secretary/Treasurer
Beall's, Inc.
1806 38TH AVE E
BRADENTON, FL 34208
Email: michaelm@beallsinc.com

Re:    Demand for Inspection of Books and Records of Bealls, Inc ("Bealls"), its affiliate
Bealls Westgate Inc. ("Westgate"), along with its subsidiaries and/or affiliated
entities for the last five (5) fiscal years.

Dear Mr. Maddaloni:

We write on behalf of Ms. Jennifer Beall who is a shareholder of Beall's, Inc. ("Beall's") by ███████████████████████████████████████████████████████ along with its affiliate company, Bealls Westgate Inc. ("Westgate" or "Affiliate", and together with Beall's and their respective subsidiaries and affiliated entities, the "Company").

Ms. Beall hereby gives notice of her intent to exercise her right as a shareholder of the Company and to inspect the corporate records pursuant to Section 607.1602, Fla. Stat. Specifically, Ms. Beall demands the right to inspect and copy the following corporate records of the Company within ten (10) business days of receipt of this demand:

1. Articles of incorporation, as currently in effect for the following entities;
   a. Bealls Westgate, Inc.;
   b. Beall's Florida, Inc.; and
   c. Beall's 1987, Inc.
2. List of all shareholders and members for the Company and each subsidiary or affiliate of the Company.
3. Bylaws, as currently in effect for the following entities:
   a. Beall's Westgate, Inc.;
   b. Beall's Florida, Inc.;
   c. Beall's 1987, Inc.; and
   d. Beall's Ecommerce, Inc.
4. Any notices to shareholders referred to in § 607.0120(11)(d), Fla. Stat. specifying facts on which a filed document is dependent, if such facts are not included in the

articles of incorporation or otherwise available as specified in § 607.0120(11)(d), Fla. Stat.;

5. All written communications within the past 5 years from the Company to shareholders generally or to shareholders of a class or series;

6. Minutes of all meetings of, and records of all actions taken with or without a meeting by, the Company's shareholders, its board of directors, and any board committees established under § 607.0825, Fla. Stat., including approval of prior year's (FY 2025) meeting minutes, election of board of directors, and the ratified actions of the board of directors;

7. A list of the names and business street addresses of the Company's current directors and officers;

8. The financial statements prepared for the Company for each of the last 5 fiscal years as well as for each of the following entities:
    a. Beall's DC TX, LLC;
    b. Beall's Land Preservation LLC;
    c. Beall's Health and Fitness, LLC;
    d. Beall's 1987 Westgate, LLC;
    e. RMB II, LLC;
    f. The Beall and Szymanski Families Asset Preservation Company, LLC;
    g. Matt Beall Limitless, LLC; and
    h. The FL LLC (as mentioned in the 2025 Bealls Inc. Annual Report, a copy of which is attached hereto as **Exhibit A**).

9. General Ledger of the Company for the last 5 years.

10. The audited financial statement for the fiscal year of 2025 of the Company;

11. The CEO Report referenced in the Bealls Inc. "Annual Shareholders Meeting Agenda" for the shareholder meeting scheduled to take place on January 13, 2026 (the "2026 Meeting Agenda");

12. All documents identifying the "Actions of the Board of Directors for the Prior Year" referenced in the 2026 Meeting Agenda.

13. The "Prior Year Meeting Minutes" identified in the 2026 Meeting Agenda.

14. The Amended and Restated Indemnification Release Agreement dated as of December 20, 2012;

15. The Indemnification and Release Agreement dated as of December 14, 2012;

16. The operating agreements as currently in effect for each of the following entities;
    a. Beall's DC TX, LLC;
    b. Beall's Land Preservation LLC;
    c. Beall's Health and Fitness, LLC;
    d. Beall's 1987 Westgate, LLC;
    e. RMB II, LLC;
    f. The Beall and Szymanski Families Asset Preservation Company, LLC;
    g. Matt Beall Limitless, LLC; and
    h. The FL LLC (as mentioned in the 2025 Beall's Annual Report).

17. The articles of organization, as currently in effect for the FL LLC (as mentioned in the 2025 Beall's Annual Report).

18. The federal, state, and local income tax returns for the Company and each of its Affiliates for the most recent 5 years as well as for each of subsidiaries and affiliated companies.

2

19. <u>Expenditures Not For the Retail Dry Goods Business</u>. Accounting records (including detailed schedules and reports) together with supporting documentation (including agreements, invoices and purchase orders) identifying all expenditures by the Company that do not directly support the retail sale of dry goods at the Company's stores. This request includes, without limitation, expenditures related to non-retail ventures (including real estate investments), sponsorships (including podcasts, experiential marketing, or similar arrangements), and any other material acquisitions or commitments that do not directly support retail dry good operations, for each of the past five (5) fiscal years.

20. <u>Capital Investments</u>. Complete accounting records and supporting documentation for all capital investments made by the Company during the past five (5) fiscal years, including for each such capital investment:
   a. the nature and purpose of the capital investment;
   b. the initial investment amount and date;
   c. the current valuation or carrying value of the investment; and
   d. any available records reflecting the financial performance or returns associated with the investment.

21. <u>Affiliate Agreements</u>. A copy of all agreements between the Company or any Affiliate of the Company, on the one hand, and any officer or director of the Company, on the other hand, including, without limitation, Robert Matthews Beall III (hereafter, "Matt Beall") and each such agreement, hereafter an "Affiliate Agreement") and all records identifying all work performed under said Affiliate Agreements and all payments made by the Company pursuant to any such Affiliate Agreement.

22. <u>Affiliate Payments</u>. Accounting records and supporting documentation including bank records reflecting payment (including reimbursement) by the Company of any personal expenses for any officer or director of the Company during the past five fiscal years of the Company.

23. <u>Foundation Records</u>. All organizational documents (including articles and bylaws) for any foundation established by or to benefit the Company or any of its employees.

This demand is made in good faith and for the proper purpose of evaluating (i) the value of Ms. Beall's interest/shares in the Company; (ii) the financial condition of the Company, ███████████████████████████████████████████████████████████████████████████ (v) whether the Company has been properly managed and whether there have been any breaches of fiduciary duties by the Company, including any mismanagement and/or waste of corporate assets; (v) whether the Company is funding personal matters and/or projects of Matt Beall ███████████████████████████████████████████████████████████████████████████ vi) whether the Company has committed itself to Affiliate Agreements that are not in the best interests of the Company or contain terms or conditions that are not commercially reasonable or are wasteful of Company resources; and (vii) whether the Company has paid or is improperly paying the personal expenses of any officer or director of the Company. The information requested is material to evaluating Ms. Beall's rights in the Company.

Please advise the undersigned where and when the above list of corporate records will be made available for inspection and copying or whether they will be produced through an electronic transmission.

Should the Company fail to comply with this demand, Ms. Beall intends to protect her rights and avail herself of her legal remedies.

Sincerely,

J. Joseph Givner, Esq.

4

# Exhibit C



**GIVNER**
— LAW GROUP —



19790 W. Dixie Hwy., Suite 706, Miami, Florida 33180

Telephone (305) 933-9970 | Facsimile (786) 520-2704
www.GivnerLawGroup.com

April 10, 2026

**Via Email:**
Mr. Daniel P. Dietrich
Gunster
Gunster, Yoakley & Stewart, P.A.
401 E Jackson St Ste 1500
Tampa, FL 33602-5204
ddietrich@gunster.com

Re:    Demand for Inspection of Books and Records of Bealls, Inc ("Bealls"), its affiliate Bealls Westgate Corporation ("Westgate"), along with its subsidiaries and/or affiliated entities.

Dear Mr. Dietrich:

We write on behalf of Ms. Jennifer Beall who is a shareholder of BEALL'S, INC. ("Bealls") ███████████████████████████████████████████████████████████████ along with its affiliate company, BEALL'S WESTGATE CORPORATION ("Westgate" or "Affiliate", and together with Bealls and their respective subsidiaries and affiliated entities, the "Company").

On January 14, 2026, Ms. Beall gave notice of her intent to exercise her right as a shareholder of the Company and to inspect corporate records pursuant to Section 607.1602, Fla. Stat. A true and correct copy of that demand for records is attached hereto as Exhibit A and incorporated herein (the "January 14th Demand").[1] The Company has failed to provide the vast majority of the documents requested. Demand is hereby made again that the Company provide the documents in the January 14th Demand within five (5) business days of date hereof.

In addition to the foregoing demand, Ms. Beall demands the following records and documents from the Company within five (5) business days of the date hereof:

1.  A copy of all agreements between (i) the Company or any Affiliate of the Company, on the one hand, and (ii) any officer or director of the Company, any member of any Company committee (including, without limitation, any compensation committee) or any Affiliate of any such Person (each, an "Affiliate Agreement") for the past five years. The term "Affiliate" means with respect to any Person, any other Person

---

[1] The January 14th Demand contained a typographical error and referred to Bealls Westgate Corporation as Bealls Westgate Inc.

Controlling, Controlled by or under common Control with such Person. The term "Person" means an individual, corporation, partnership, limited liability company, association, trust, unincorporated organization or other entity. The term "Control" (and correlative terms) means, with respect to any Person, the power to direct the management of the Person (directly or indirectly) and the ownership of more than 50% of the voting securities, other voting ownership or voting partnership interests of such Person (or, if there are no such voting interests, more than 50% of the equity interests of such Person).

2. All documents identifying any bids or proposals by third parties to perform any of the services currently being provided under any Affiliate Agreement together with a copy of each such bid or proposal.

3. All records identifying all work performed for the Company under each Affiliate Agreement.

4. All documents reflecting payments made by the Company pursuant to any Affiliate Agreement.

5. All board of director meeting minutes or resolutions authorizing each Affiliate Agreement.

6. All agreements between the Company and any third party regarding acceptance of cryptocurrencies as payment for goods sold by the Companies or their affiliates including, without limitation, any agreements with FLEXA, INC., most commonly known as FlexaHQ on the X platform (each, a "Cryptocurrency Agreement").

7. All board of director meeting minutes or resolutions authorizing any Cryptocurrency Agreement.

8. All studies and/or analysis performed by or on behalf of the Company for purposes of evaluating the advantages and disadvantages of the Company accepting cryptocurrency as a form of payment.

9. All records reflecting payment (including reimbursement) by the Company for (i) the costs of any podcasts by Robert Matthews Beall III or his spouse during the past five fiscal years of the Company or (ii) any social media content or message generated by or on behalf of Matt III.

10. All agreements between the Company and Kathy Tolleson and/or any affiliate of Kathy Tolleson including agreements relating to board retreats.

11. All communications from Company personnel regarding any training, counseling or therapy provided by Kathy Tolleson paid for, in whole or in part, by the Company.

Each of the above requests seeks responsive documents from the past five years.

This demand is made in good faith and for the proper purpose of evaluating (i) the value of Ms. Beall's interest/shares in the Company; (ii) the financial condition of the Company, ████████████ ██████████████████████████████████████ (v) whether the Company has been properly managed and whether there have been any breaches of fiduciary duties by management of the Company, including any mismanagement and/or waste of corporate assets; (v) whether the Company is funding personal matters and/or projects of Robert Matthews Beall III ███████████████ ████████████████████████████████████████████ and (vi) whether the Company has committed itself to Affiliate Agreements or other

2

agreements that are not in the best interests of the Company or contain terms or conditions that are not commercially reasonable or are wasteful of Company resources The information requested is also material to evaluating Ms. Beall's rights in the Company.

To the extent the Company claims any of the records requested that will be produced is confidential, Ms. Beall is prepared to enter into a confidentiality agreement in the form of Exhibit B.

Please advise the undersigned where and when the above list of corporate records will be made available for inspection and copying or whether they will be produced through an electronic transmission.

Sincerely,

J. Joseph Givner, Esq.

3

# Exhibit A



# GIVNER
— LAW GROUP —

19790 W. Dixie Hwy., Suite 706, Miami, Florida 33180

Telephone (305) 933-9970 | Facsimile (786) 520-2704
www.GivnerLawGroup.com

January 14, 2026

**Via Email:**
Mr. Michael Maddaloni
VP Tax & Shareholder Relations/Asst. Secretary/Treasurer
Beall's, Inc.
1806 38TH AVE E
BRADENTON, FL 34208
Email: michaelm@beallsinc.com

Re:     Demand for Inspection of Books and Records of Bealls, Inc ("Bealls"), its affiliate
        Bealls Westgate Inc. ("Westgate"), along with its subsidiaries and/or affiliated
        entities for the last five (5) fiscal years.

Dear Mr. Maddaloni:

We write on behalf of Ms. Jennifer Beall who is a shareholder of Beall's, Inc. ("Beall's") by virtue of her status as ███████████████████████████████████████████████████ ████████████████████████████████████ along with its affiliate company, Bealls Westgate Inc. ("Westgate" or "Affiliate", and together with Beall's and their respective subsidiaries and affiliated entities, the "Company").

Ms. Beall hereby gives notice of her intent to exercise her right as a shareholder of the Company and to inspect the corporate records pursuant to Section 607.1602, Fla. Stat. Specifically, Ms. Beall demands the right to inspect and copy the following corporate records of the Company within ten (10) business days of receipt of this demand:

1. Articles of incorporation, as currently in effect for the following entities;
   a. Bealls Westgate, Inc.;
   b. Beall's Florida, Inc.; and
   c. Beall's 1987, Inc.
2. List of all shareholders and members for the Company and each subsidiary or affiliate of the Company.
3. Bylaws, as currently in effect for the following entities:
   a. Beall's Westgate, Inc.;
   b. Beall's Florida, Inc.;
   c. Beall's 1987, Inc.; and
   d. Beall's Ecommerce, Inc.
4. Any notices to shareholders referred to in § 607.0120(11)(d), Fla. Stat. specifying facts on which a filed document is dependent, if such facts are not included in the

articles of incorporation or otherwise available as specified in § 607.0120(11)(d), Fla. Stat.;

5. All written communications within the past 5 years from the Company to shareholders generally or to shareholders of a class or series;

6. Minutes of all meetings of, and records of all actions taken with or without a meeting by, the Company's shareholders, its board of directors, and any board committees established under § 607.0825, Fla. Stat., including approval of prior year's (FY 2025) meeting minutes, election of board of directors, and the ratified actions of the board of directors;

7. A list of the names and business street addresses of the Company's current directors and officers;

8. The financial statements prepared for the Company for each of the last 5 fiscal years as well as for each of the following entities:
   a. Beall's DC TX, LLC;
   b. Beall's Land Preservation LLC;
   c. Beall's Health and Fitness, LLC;
   d. Beall's 1987 Westgate, LLC;
   e. RMB II, LLC;
   f. The Beall and Szymanski Families Asset Preservation Company, LLC;
   g. Matt Beall Limitless, LLC; and
   h. The FL LLC (as mentioned in the 2025 Bealls Inc. Annual Report, a copy of which is attached hereto as **Exhibit A**).

9. General Ledger of the Company for the last 5 years.

10. The audited financial statement for the fiscal year of 2025 of the Company;

11. The CEO Report referenced in the Bealls Inc. "Annual Shareholders Meeting Agenda" for the shareholder meeting scheduled to take place on January 13, 2026 (the "2026 Meeting Agenda");

12. All documents identifying the "Actions of the Board of Directors for the Prior Year" referenced in the 2026 Meeting Agenda.

13. The "Prior Year Meeting Minutes" identified in the 2026 Meeting Agenda.

14. The Amended and Restated Indemnification Release Agreement dated as of December 20, 2012;

15. The Indemnification and Release Agreement dated as of December 14, 2012;

16. The operating agreements as currently in effect for each of the following entities;
   a. Beall's DC TX, LLC;
   b. Beall's Land Preservation LLC;
   c. Beall's Health and Fitness, LLC;
   d. Beall's 1987 Westgate, LLC;
   e. RMB II, LLC;
   f. The Beall and Szymanski Families Asset Preservation Company, LLC;
   g. Matt Beall Limitless, LLC; and
   h. The FL LLC (as mentioned in the 2025 Beall's Annual Report).

17. The articles of organization, as currently in effect for the FL LLC (as mentioned in the 2025 Beall's Annual Report).

18. The federal, state, and local income tax returns for the Company and each of its Affiliates for the most recent 5 years as well as for each of subsidiaries and affiliated companies.

2

19. <u>Expenditures Not For the Retail Dry Goods Business</u>. Accounting records (including detailed schedules and reports) together with supporting documentation (including agreements, invoices and purchase orders) identifying all expenditures by the Company that do not directly support the retail sale of dry goods at the Company's stores. This request includes, without limitation, expenditures related to non-retail ventures (including real estate investments), sponsorships (including podcasts, experiential marketing, or similar arrangements), and any other material acquisitions or commitments that do not directly support retail dry good operations, for each of the past five (5) fiscal years.

20. <u>Capital Investments</u>. Complete accounting records and supporting documentation for all capital investments made by the Company during the past five (5) fiscal years, including for each such capital investment:
    a. the nature and purpose of the capital investment;
    b. the initial investment amount and date;
    c. the current valuation or carrying value of the investment; and
    d. any available records reflecting the financial performance or returns associated with the investment.

21. <u>Affiliate Agreements</u>. A copy of all agreements between the Company or any Affiliate of the Company, on the one hand, and any officer or director of the Company, on the other hand, including, without limitation, Robert Matthews Beall III (hereafter, "Matt Beall") and each such agreement, hereafter an "Affiliate Agreement") and all records identifying all work performed under said Affiliate Agreements and all payments made by the Company pursuant to any such Affiliate Agreement.

22. <u>Affiliate Payments</u>. Accounting records and supporting documentation including bank records reflecting payment (including reimbursement) by the Company of any personal expenses for any officer or director of the Company during the past five fiscal years of the Company.

23. <u>Foundation Records</u>. All organizational documents (including articles and bylaws) for any foundation established by or to benefit the Company or any of its employees.

This demand is made in good faith and for the proper purpose of evaluating (i) the value of Ms. Beall's interest/shares in the Company; (ii) the financial condition of the Company, █████████████████████████████████████████████████████████████████████ (v) whether the Company has been properly managed and whether there have been any breaches of fiduciary duties by the Company, including any mismanagement and/or waste of corporate assets; (v) whether the Company is funding personal matters and/or projects of Matt Beall █████████████████████████████████████████████████████████ vi) whether the Company has committed itself to Affiliate Agreements that are not in the best interests of the Company or contain terms or conditions that are not commercially reasonable or are wasteful of Company resources; and (vii) whether the Company has paid or is improperly paying the personal expenses of any officer or director of the Company. The information requested is material to evaluating Ms. Beall's rights in the Company.

Please advise the undersigned where and when the above list of corporate records will be made available for inspection and copying or whether they will be produced through an electronic transmission.

Should the Company fail to comply with this demand, Ms. Beall intends to protect her rights and avail herself of her legal remedies.

Sincerely,

J. Joseph Givner, Esq.

# Exhibit B

## <u>CONFIDENTIALITY AGREEMENT</u>

THIS CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of March ___, 2026, by and between Jennifer Beall ("Shareholder"), on the one hand, and Beall's, Inc. and Beall's Westgate Corporation (collectively, "Bealls"), on the other hand. Each is a "Party" and collectively the "Parties."

## RECITALS

A.    Shareholder has exercised her right as a shareholder of Bealls to inspect the corporate records pursuant to Florida Statute §607.1602. On January 14, 2026, Ms. Beall served Bealls with a Demand for Inspection of Books and Records that included 23 separate categories of documents requested (the "Demand').

B.    Bealls responded to the Demand by agreeing to produce documents responsive to certain of the requests and agreed to confer further on the remaining requests.

C.    Certain documents responsive to the Demand may contain confidential and/or proprietary information and, accordingly, the Parties are entering into this Agreement to ensure that any Confidential Information (defined below) disclosed by Bealls and received by Ms. Beall remains confidential in accordance with this Agreement and for the purposes contemplated by this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set out herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    For the purposes hereof, the term "Confidential Information" shall mean any and all information of a confidential nature regardless of whether it be oral or written, which may include documents, communications, financial statements, customer lists, business plans, supplier lists, pricing information, vendor information, biographical information, personally identifiable information, market studies and analysis, product information, and other information, documents, items or communication disclosed by Bealls and relating to Bealls and its affiliates; provided, however, that the term Confidential Information shall not include any information identified in Section 4.

2.    Shareholder recognizes and acknowledges that: (a) she is being provided access to what may be Confidential Information regarding Bealls and its affiliates, which may include ideas, concepts, inventions, trade secrets, patent applications, know-how, designs, methodologies, techniques, protocols, procedures, processes, research, specifications, data, technical information, instructions, manuals, financial information, information regarding stockholders, partners, members, managers, directors, officers and other related third parties, information regarding clients, employees, contractors, affiliates, pricing, and costs, regulatory, marketing, manufacturing and commercial strategies, programs, devices; information and materials of third parties for which the disclosing party is under an obligation

Page 1 of 4

of confidentiality; and all analyses, compilations, data, studies, reports or other documents prepared or derived therefrom, whether in written, oral, visual, physical or other tangible medium; (b) that such information may constitute Confidential Information; and (c) that Confidential Information constitutes valuable, special and unique property of Bealls to which it belongs.

3.      Shareholder represents, warrants and agrees that she will not, for any reason or purpose whatsoever, directly or indirectly: (a) reproduce, divulge or disseminate any Confidential Information of Bealls to any person or entity, except as expressly permitted in this Agreement; or (b) use any Confidential Information of Bealls for any purpose other than those expressed in the Demand including evaluating her rights in Bealls.

4.      The term Confidential Information does not apply, and the foregoing obligations shall not apply, to any portion of the information provided by Bealls that: (a) is at the time of disclosure or thereafter becomes available to the public other than as a result of disclosure by Shareholder; (b) is lawfully received from a third party who is not obligated to hold such information in confidence; (c) Shareholder can establish in writing was in her possession prior to the time of disclosure and was not acquired, directly or indirectly, from Bealls; (d) is independently developed or acquired by Shareholder without use or reference to such Confidential Information; (e) is produced by Bealls to Shareholder pursuant to Section 607.1601(1), Fla. Stat.; or (f) Shareholder is required to disclose by law or by a court or other tribunal of competent jurisdiction, provided, however, that in such case (i) she shall immediately give as much advance notice as feasible to Bealls to enable it to exercise its legal rights to prevent and/or limit such disclosure, and (ii) Shareholder shall disclose only that portion of the Confidential Information that, in the opinion of Bealls legal counsel, is legally required to be disclosed and will exercise reasonable efforts to ensure that any such information so disclosed will be accorded confidential treatment.

5.      Shareholder may disclose Confidential Information only (i) to her attorneys and accountants, as well as experts, consultants and professional advisors engaged by counsel to assist in the review of the Confidential Information who are bound by obligations of confidentiality and restrictions on use comparable to those set forth herein, (ii) to the persons identified as an author or recipient of the subject document provided; (iii) to outside copy services (and their employees) engaged to make copies of any information produced who agree in writing to keep the information disclosed confidential; (iv) to a family member who qualifies as a shareholder under Section 607.1602(10) and executes a joinder to this Agreement agreeing to keep Confidential Information disclosed confidential pursuant to the terms of this Agreement and (v) in court filings and court proceedings (including hearings, trials and depositions) subject to reasonable efforts to maintain the confidentiality of such filings and proceedings that may include the submission of a court ordered protective order by the parties or other appropriate safeguards. Shareholder shall cause those individuals who obtain access to any Confidential Information pursuant to Clause (i) above ("Advisors") to maintain the confidentiality thereof and to use such Confidential Information only in accordance with this Agreement. Shareholder shall be responsible for any breach of this Agreement by her Advisors. Shareholder shall notify Bealls in writing within 5 days of any

Page **2** of **4**

misuse or misappropriation of the Confidential Information that comes to her attention. Such notification shall be sent via email to Michael Maddaloni (michaelm@beallsinc.com).

6.    Shareholder agrees to institute and maintain appropriate security measures to carry out the purpose and intent of this Agreement and otherwise to use commercially reasonable measures to maintain the confidential nature of the Confidential Information with at least the same care as she utilizes with respect to her own confidential information.

7.    This Agreement shall not be deemed to create any partnership, joint venture, license or other similar arrangement between the Parties.

8.    Shareholder acknowledges that a breach of this Agreement may result in irreparable and continuing damage to Bealls, for which there may be no adequate remedy at law, and agrees that, in the event of any breach, Bealls shall be entitled to seek injunctive relief and to such other and further relief, including damages, as may be proper.

9.    This Agreement shall be construed in accordance with the internal laws of the State of Florida.

10.    In the event of a dispute arising from or relating to this Agreement, the prevailing party shall be entitled to recover the costs, expenses and reasonable attorneys' fees incurred.

11.    If any provision of this Agreement or the application in any particular circumstance is held illegal, invalid or unenforceable, such illegality, invalidity or unenforceability shall not affect any other provision hereof. This Agreement shall, in such circumstances, be deemed modified to the extent necessary to render enforceable the provisions hereof to the fullest extent permitted by law.

12.    The restrictions and obligations in this Agreement shall survive for a period of five (5) years. This Agreement shall binding upon, and inure to the benefit of, the Parties and their respective successors and lawful assigns subject to applicable statute of limitations, if any.

13.    This Agreement may be executed in separate counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same agreement. This Agreement may be delivered by the Parties by electronic or facsimile transmission with the same effect as if delivered personally.

IN WITNESS WHEREOF, the Parties have entered into this Agreement as of the date set forth above.

Page 3 of 4

**Beall's, Inc.**

_____          **Jennifer Beall**

Printed Name:_____
Its Authorized Representative

**Beall's Westgate Corporation.**

_____

Printed Name:_____
Its Authorized Representative